SCHOOL DISTRICT OF LAFARGE, Paul Jacobson and
Deanna Ehmann, Petitioners

v.

Kenneth E. LINDNER, Secretary of the Department of Ad-
ministration, State of Wisconsin, Department of Ad-
ministration, State of Wisconsin, Mark E. Musolf,
Secretary of the Department of Revenue, State of
Wisconsin, Department of Revenue, State of Wiscon-
sin, Barbara Thompson, Superintendent of the De-
partment of Public Instruction, Department of Pub-
lic Instruction, Respondents.

Supreme Court

*No. 80–1749–OA. Argued January 6, 1981.—
Decided February 2, 1981.*
(Also reported in 301 N.W.2d 196.)

For the petitioners there were briefs and oral argu-
ment by *Bruce Meredith,* staff counsel, Wisconsin Edu-
cation Association Counsel.

For the respondents the cause was argued by *F. Jo-
seph Sensenbrenner, Jr.,* assistant attorney general, with
whom on the brief were *Bronson C. La Follette,* attor-
ney general, and *Gerald S. Wilcox,* assistant attorney
general.

Amicus curiae brief was filed by *James F. Clark, Ken-
neth B. Axe* and *Isaksen, Lathrop, Esch, Hart & Clark*

of Madison, for Wisconsin Association of School Boards, Inc.

BEILFUSS, C.J. This matter comes before us as an original action for a declaration of rights. On September 24, 1980, the petitioners, the School District of La Farge and two parents of school-age children from that district, filed a petition for leave to commence this action. We granted the petition on October 29, 1980. The cause is submitted for our determination on the basis of an agreed statement of facts.

This controversy stems from an order of the respondent Kenneth E. Lindner, Secretary of the Department of Administration (secretary), which was sent to all heads of executive agencies on July 2, 1980. The order indicated that all allotments made against the general purpose revenue and local tax revenue appropriations would be reduced by 4.4 percent below the levels appropriated for the fiscal year 1980–1981.

On July 22, 1980, the respondent Department of Public Instruction (department) notified the school districts of the contemplated reduction. According to the notice, all aid payments to local districts would be reduced by 4.4 percent. The reduction would affect both general and categorical aids. The payment of general school aid is authorized by sec. 121.01 *et seq.* Stats. Categorical state aids are payments for special programs, for example, the driver education aid program, school transportation assistance, and programs for children with special educational needs. These types of special purpose aid programs are authorized by various statutes within Title XIV. General school aids for each district are based upon a statutory formula that uses the equalized value of the property within the district as one of its factors. Because of this fact the amount of school aid per pupil can vary considerably from district to district. Categorical aids are not de-

pendent upon district property values and are paid as a specific amount per pupil in the special program under statutory formulas. Funds for both the general and categorical aid programs have been appropriated by the legislature as set forth in ch. 34, Laws of 1979 and in other appropriation bills subsequently enacted into law during the legislative session. If these aid payments are reduced as intended, the school districts will receive about 38.5 million dollars less than the sums appropriated by the legislature.

According to the agreed statement of facts, there will be sufficient revenue available in the general fund to make all aid payments to school districts until the second quarter of calendar year 1981 (the fourth quarter of the fiscal year 1980–1981). During that quarter there will be insufficient revenues to meet all the expenditures contemplated by ch. 20, Stats., as affected by the appropriations enacted into law during the 1979 legislative session.

The secretary has justified the proposed payment reductions on the basis of the authority granted to him by sec. 16.50, Stats.[1] The petitioners challenge the sec-

---

[1] All statutory references in this opinion will be to the 1979 Stats.

"16.50 Departmental estimates. (1) EXPENDITURES. Each department except the legislature and the courts shall prepare and submit to the secretary an estimate by quarters of the amount of money which it proposes to expend upon each of its divisions, activities, functions and programs. The secretary may waive the submission of estimates of other than administrative expenditures from such funds as he determines. Estimates shall be prepared in such form and at such times as the secretary requires. Revised and supplemental estimates may be presented at any time under rules to be prescribed by the secretary.

"(2) ACTION THEREON BY SECRETARY. The secretary shall examine each such estimate to determine whether appropriations are available therefor and can be made without incurring danger of exhausting such appropriations before the end of the appropriation period and whether there will be sufficient revenue to meet

retary-respondent's authority to reduce payments under the terms of that statute.

We have previously considered the validity of the secretary's payment reduction order as it related to shared revenue payments to municipalities under secs. 79.03 and 79.16, Stats. It was concluded that sec. 16.50 did not grant the secretary the authority to reduce these payments. *See Milwaukee v. Lindner,* 98 Wis.2d 624, 297 N.W.2d 828 (1980). The question presented to us in this case is whether the reduction of payments of general and categorical school aids under Title XIV of the statutes is justified by the terms of sec. 16.50.

The secretary of the Department of Administration is the fiscal officer of the state and, as such, is a part of the general executive structure. *See* secs. 15.05 and 15.-10, Stats. He is charged with the duty of compiling the governor's budget report under sec. 16.46 and the summary of budget recommendations under sec. 16.461. These recommendations are ultimately incorporated into the executive budget bill and are submitted to the joint finance committee for consideration. *See* sec. 16.47.

In addition to budget responsibilities, the secretary is the chief monitor of the day-to-day fiscal affairs of the state. Money collected by the various departments is

such contemplated expenditures. The secretary also shall examine each estimate to assure as nearly as possible that the proposed plan of program execution reflects the intentions of the joint committee on finance, legislature and governor, as expressed by them in the budget determinations. If satisfied that such estimate meets these tests, he shall approve the same; otherwise he shall disapprove the same, in whole or in part, as the facts require. If the secretary is satisfied that an estimate for any period is more than sufficient for the execution of the normal functions of a department, he may modify or withhold such estimates. It is the intent of the legislature that this section be strictly construed by the secretary to the end that such budget determinations and policy decisions reflected by such determinations be implemented to the fullest extent possible within the concepts of proper management."

turned over to the state treasurer. *See* sec. 20.906, Stats. The secretary, as head of the Department of Administration, is responsible for keeping account of the monies received or held by the state. *See* sec. 16.52. He also oversees the expenditures incurred by the various state agencies. The secretary monitors each disbursement and expenditure of the state. *Id.* Indeed, it is the issuance of the warrant of the Secretary of the Department of Administration to the treasurer which authorizes the payment of sums from the state treasury. Sec. 14.58 provides that the state treasurer shall "pay out of the treasury, on demand, upon the warrants of the department of administration and not otherwise such sums only as are authorized by law to be so paid. . . ." Money is not received into the state treasury nor is it expended by any department without the knowledge and approval of the Department of Administration.

Sec. 16.50, Stats., allows the secretary to keep a quarter-by-quarter monitor on the proposed expenditures of the various departments. All executive agencies are encompassed by the scope of sec. 16.50. *See* sec. 16.002(4). Each of these agencies or departments must submit "an estimate by quarters of the amount of money which it proposes to expend upon each of its divisions, activities, functions and programs." *See* sec. 16.50(1). The secretary is charged with the duty of examining these estimates for the purpose of determining, *inter alia,* whether there are adequate appropriations for the expenditures and whether there will be sufficient revenue to meet the contemplated expenditures. Sec. 16.50(2). If the secretary does not approve of the departmental estimate, he "may not draw his warrant for payment of any expenditure incurred by any department." Sec. 16.50(5). In effect, the secretary can modify or prevent the payment of a departmental expenditure by virtue of his refusal to issue a warrant for payment when he perceives a fiscal crisis.

The secretary argues that the language of sec. 16.50 (2), Stats., grants to him the authority to reduce expenditures, including school aids, when the facts indicate that sufficient revenue will not be available to fund all legislative appropriations. The secretary contends that the payment of school aids is a function, activity, and program of a division of the Department of Public Instruction within the meaning of sec. 16.50 (1). Therefore, he concludes sec. 16.50 grants him the authority to reduce payments under the school aids plan.

We do not accept the secretary's interpretation of sec. 16.50, Stats. Under sec. 16.50 the secretary may modify payments of amounts of money which a department "proposes to expend upon each of its divisions, activities, functions and programs." In light of our recent decision in *Milwaukee v. Lindner, supra,* we conclude that the payment of school aids is not an expenditure for a departmental division, activity, function or program.[2]

In the case of *Milwaukee v. Lindner,* it was held that sec. 16.50, Stats., did not authorize the reduction of shared revenue payments to municipalities under ch. 79. It was concluded that shared revenues were not sums expended upon a Department of Revenue division, activity, function or program. This conclusion was reached in view of the revenue department's "conduit-like" role in the transfer of funds from the state treasury to the municipalities. The court wrote that the appropriations

". . . were not contemplated by the legislature to be a division, activity, function or program of the Department of Revenue, nor of the Department of Administration and, therefore, are not under the requirements of sec. 16.50. The Department of Revenue under the budget

---

[2] Although sec. 16.50, Stats., has been challenged as an unlawful delegation of legislative authority, our interpretation of the statute in this case does not require us to reach that question.

bill is a conduit only for the funds appropriated under shared revenue and property tax relief to be transferred to the municipalities and counties." 98 Wis.2d at 633.

Under the *Milwaukee v. Lindner* decision, a disbursement of a sum of money is not a departmental expenditure upon a division, activity, function or program when the department's role in the disbursement of the state funds is essentially mechanical. When the disbursement is unrelated to a discretionary expenditure incurred in the execution or administration of a program responsibility it is not a departmental expenditure within the meaning of sec. 16.50 (1).

This "mechanical role" in the disbursement of funds is dramatically illustrated by the circumstances surrounding the *Milwaukee v. Lindner Case*. Under ch. 79, Stats., the role of the Department of Revenue is that of an information gatherer which certifies certain facts and figures to the Department of Administration. These facts and figures determine the amount to be distributed as shared revenue under ch. 79. *See* secs. 79.03 and 79.16. That amount is arrived at by the Department of Revenue by virtue of a statutory formula. *Id.* Upon certification of the calculated amount by the revenue department, the Department of Administration is responsible for drawing a warrant of payment for distribution to the municipalities. *Id.* In view of the purely mechanical role of the Department of Revenue, the court concluded that the payments under the revenue sharing program were not departmental expenditures for a division, activity, function or program. The mere certification of facts or figures to the Department of Administration for the purpose of calculating a legislatively mandated aid distribution scheme does not make the payment of the aid an expenditure of the certifying department.

An examination of the general and categorical school aids program leads us to conclude that the disbursement of funds to school districts is a mechanical task of the Department of Public Instruction as contemplated by our decision in *Milwaukee v. Lindner, supra.* These payments cannot be considered departmental expenditures.

The payment of school aids is analogous to the revenue sharing payments in *Milwaukee v. Lindner.* The amount of the payment of general school aid to any one school district is calculated on the basis of a formula set forth at sec. 121.08, Stats. The formula is calculated on the basis of a set of facts and figures. It is the Department of Public Instruction's responsibility to gather these facts and figures and to calculate the amounts to be distributed upon the aid program. Sec. 115.28(11). In the distribution of general school statutory aids, the department does no more than certify the amounts calculated under the school aid formula to the Department of Administration to facilitate the transfer of state funds to school districts. Categorical school aids are disbursed to school districts on the basis of a percentage of the amount spent by the local district on a given program. *See, e.g.,* secs. 115.995 and 115.88. In relation to these types of aid it is generally the duty of the department to determine the amount expended by the school district and to certify the amount that is due under the aid program. *See, e.g.,* sec. 115.88(1). It is then the responsibility of the Department of Administration to draw a warrant in the certified amount.

We are not unaware of the discretionary authority of the Department of Public Instruction as compared with the lack of departmental discretion involved in the *Milwaukee v. Lindner* fact situation. The superintendent of public instruction has authority to withhold aid if he or she is not satisfied that a school district is in compliance with the law. Sec. 121.006, Stats. Especially with reference to programs receiving categorical aid,

the superintendent and the department define program standards by virtue of administrative regulation. However, the authority to insure compliance with the statutory and regulatory provisions and the authority to initially set program standards does not alter the fact that the school aids statutes require the disbursements of state funds to school districts once the districts have complied with the dictates of the law. Having set the standards and having determined that the school districts are in compliance with all applicable law, the duty of the department is to merely certify these facts to the Department of Administration so that the school aids may be transferred to the districts. In sum, the initial discretionary authority of the superintendent or the department does not transform the mandatory aid payments into departmental expenditures incurred in the execution or administration of a program responsibility.

Under the terms of sec. 16.50, Stats., the secretary may not reduce payments made pursuant to the school aids program established by the legislature. A mere mechanical certification of facts and figures as a condition precedent to the transfer of state funds is not a departmental expenditure as contemplated by sec. 16.50. The terms of that statute only encompass expenditures over which a department exercises control and discretion.[3]

*By the Court.*—The court issues a permanent injunction enjoining the respondent Secretary of the Department of Administration, State of Wisconsin, from reducing payments to school districts under the general and categorical aid programs established by Title XIV of the statutes below amounts appropriated by the legislature.

---

[3] This is not to say that our state government is unequipped to deal with the problems of a fiscal emergency created by a revenue short-fall. The legislature itself may act to readjust its appropriations in light of decreased revenues.